**UNITED STATES of America, Plaintiff,**

v.

**STANDARD METALS CORPORATION, Defendant.**

**Civ. A. No. 81–C–489.**

United States District Court,
D. Colorado.

May 23, 1985.

Joseph F. Dolan, U.S. Atty., Denver, Colo., Anthony C. Liotta, Acting Asst. Atty. Gen., Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Clyde O. Martz, Denver, Colo., for defendant.

### ORDER

CARRIGAN, District Judge.

The United States brought this action against Standard Metals Corporation alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* The parties, on August 23, 1982, entered into a stipulation and settlement whereby Standard paid $25,000 to the United States. An additional $25,000 fine was suspended, provided that Standard did not exceed certain effluent limitations set forth in the stipulation "unless excusable or allowable under the applicable permit." I retained jurisdiction over

this action to conduct further proceedings "upon motion of the parties to compel compliance or grant other appropriate relief to insure compliance with the provisions of this stipulation."

On December 16, 1983, the United States demanded payment from Standard of the $25,000 suspended fine. The United States alleges that Standard violated the stipulated limitation on zinc discharges. On January 24, 1984, Standard requested a de novo hearing to determine whether the United States may collect the suspended payment under the terms of the stipulation.

On May 2, 1984, Standard advised this court that it had petitioned for bankruptcy under Chapter 11, and that it believed the collection of the suspended penalty was automatically stayed under 11 U.S.C. § 362(a)(1). On August 28, 1984, I ordered the United States to show cause why 11 U.S.C. § 362(a)(1) should not be applied to automatically stay collection of the penalty. Both parties have now thoroughly briefed this issue.

Decision of this matter turns on interpretation of the automatic stay provision of the Bankruptcy Code and its exceptions. 11 U.S.C. § 362 provides in pertinent part:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; ....

\* \* \* \* \* \*

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

\* \* \* \* \* \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ...."

The United States asserts that this is an action to enforce its regulatory power under the Clean Water Act, and, therefore, is excepted from the automatic stay provision by § 362(b)(4). Standard argues, on the other hand, that the government merely seeks to protect its pecuniary interest in a private contract. It has been established that an action by a governmental unit to protect a pecuniary interest is stayed by § 362(a)(1). *In re Farmers Markets, Inc.,* 36 B.R. 829, 833 (Bankr.E.D.Cal.1984); *In re Aegean Fare, Inc.,* 35 B.R. 923, 927 (Bankr.D.Mass.1983); *In re Greenwald,* 34 B.R. 954, 956 (Bankr.S.D.N.Y.1983); *see, also* 1978 U.S.Code Cong. & Ad.News at 6444–45 (remarks of Rep. Edwards) and 1978 U.S.Code Cong. & Ad.News at 6513 (remarks of Sen. DeConcini).

Upon careful review of the file and the briefs submitted by the parties, I conclude that this is the classic regulatory enforcement action contemplated by § 362(b)(4). *See, e.g., United States v. Energy International, Inc.,* 19 B.R. 1020 (S.D.Ohio 1981) (where Department of the Interior sought a civil penalty for violations of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et seq.;* held: the action was excepted from the automatic stay provision as an action to enforce regulatory powers of the United States).

Environmental laws are enforced in a variety of ways. The Third Circuit held in *Penn Terra Limited v. Department of En-*

*vironmental Resources, Commonwealth of Pennsylvania,* 733 F.2d 267 (1984), that an action to enjoin the operator of a coal mine to correct violations of state environmental protection statutes came within the police power exception, § 362(b)(4). Section 362(b)(5) makes it clear that a court may both enter and enforce an injunction obtained in a regulatory enforcement action, even though the injunction will require the debtor to spend money in order to remedy the problem. *Id.*

Injunctive relief, however, is not always an appropriate remedy. In the instant case, the parties chose, and I approved, a monetary penalty as the enforcement mechanism. The suspended fine was obviously designed to provide Standard an incentive to exercise care to *prevent* releases of pollutants. Once a pollutant is released from Standard's facility, as the government alleges occurred, it is carried downstream and harm is done immediately.

If consideration of the fine mechanism is confined to the time after the release occurred, it may appear that the government is merely trying to protect a pecuniary interest in collecting the fine. Standard argued in its brief in response to the plaintiff's show cause statement that "unlike in the *Penn Terra* case, the United States here is *not* seeking to enjoin or compel any action by Standard Metals which would abate, alleviate or remedy any circumstances relating to the public health or safety." I find this view unduly circumscribed. One must consider the deterrence function of the fine prior to the release. If one in precarious financial condition knows that any action to assess a fine will be stayed by filing for bankruptcy, he will have little incentive to guard against environmental pollution. The public's safety, health and welfare would be placed in jeopardy by eliminating the practical deterrent of the fine in those circumstances. It is the purpose of § 362(b)(4) to prevent endangerment of the public that would result from permitting a bankrupt to avoid statutes and regulations enacted in furtherance of governmental police powers.

This view is supported by the legislative history of §§ 362(b)(4) and (b)(5). The House Committee report thus explained the purpose of these exceptions:

"Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors." H.R.Rep. No. 595, 95th Cong., 1st Sess. 343, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6299.

This is an action to fix damages for violation of environmental protection laws and thus clearly falls within the ambit of § 362(b)(4).

The legislative history also illuminates the distinction between *entry* of a money judgment and *enforcement* of a money judgment. *See Penn Terra,* 733 F.2d at 274–79. The United States seeks *entry* of a money judgment in this action. It will seek enforcement of any judgment entered, along with other creditors, in the Bankruptcy Court proceedings.

Accordingly,

IT IS ORDERED that Standard Metal Corporation's suggestion that this action is stayed pursuant to 11 U.S.C. § 362(a)(1) is overruled.

IT IS FURTHER ORDERED that this case is reopened and returned to the docket.

IT IS FURTHER ORDERED that Standard Metal Corporation's motion to set this matter for a hearing is granted. The parties shall contact this court within ten days to set this matter for hearing.