74 B.R. 546 (1987)
Brian M. O'BRIEN, D.C.; Brian M. O'Brien, D.C., dba Kapaa Chiropractic Clinic, Inc.; James H. Hattaway, D.C.; Michael Pierner, D.C.; Michael Pierner, D.C., dba Island Chiropractics, Ltd.; Michael Pierner, D.C., dba Lahaina Health Center; Michael Pierner, D.C., dba Central Pacific Chiropractics; Michael Pierner, D.C., dba Wailuku Chiropractics; Michael Pierner, D.C., dba Kahei Health Center; Rhody Edwards, D.C.; Rhody Edwards, D.C., Inc., dba Malama Chiropractic Clinic; and Kelvin M. Washington, D.C., Plaintiffs,
v.
Robert F. FISCHEL, D.C.; Thomas Grollman, M.D.; Mitchell Eli, D.C.; Rowlin Lichter, M.D.; Calvin Kam, M.D.; Accumed Analysis; Aetna Life and Casualty Company; Allstate Insurance Company; American Family Insurance Company; Amfac, Inc.; American International Adjusting Company; American Mutual Insurance Company; Argonaut Insurance Company; Atlast Insurance Company; BBA/GEICO; Bishop Insurance Company; Blue Cross; Blue Cross of Washington and Alaska; Blue Cross/Blue Shield; Blue Shield; Brown Brothers Adjustors; California Life Insurance Company; California Pacific Insurance Company; Combined Insurance Company of America; Commercial Union Insurance Company Hawaii; Commercial Union Life Insurance Company; Consolidated Insurance Adjustors; Consumers United Insurance Company; Crawford & Company; Dillingham Corporation; Don Beaudry Adjustors; Department of Social Services and Housing; Equitable Life Assurance; Farmers Insurance; Farmers Insurance Group of Companies; Financial Security; Firemans Fund Insurance Company; First Insurance Company of Hawaii, Ltd.; Friends America Insurance; GEICO Insurance; General Adjustment Bureau; Grand Pacific Life Insurance Company, Ltd.; Guarantee Trust; Hamakua Sugar Company; Hawaiian Dredging and Construction Company; Hawaii Medical Services Association; Hawaiian Insurance and Guarantee Company, Ltd.; Highgates Ranch; Heritage Insurance Company; Heritage Life Insurance Company; IBW/NECA; Industrial Indemnity Insurance Specialists of Hawaii; Industrial Insurance Company of Hawaii, Ltd.; Insurance of North America; Insurance Specialists of Hawaii; Island Insurance Company; J.D. Jenkins Company; John Hancock Insurance Company; John Mullens and Company; Kapalua Bay Hotel; Kapalua Land Company; Kauai Medical Group, Inc.; Leonard J. Russo, Inc.; Lihue Plantation; Mahelona Hospital; Marsh & McLennan; Maui County; Maui Land and Pine; Mauna Kea Beach Hotel; Medata Med-Review; Mission Insurance Company; Motion Picture Health/Welfare Fund; Mutual of Omaha; National Union Insurance Company; Pacific Insurance Company, Ltd.; Pensioned Operating Engineers; Royal Insurance; State Farm Insurance; Transamerica Insurance Company; Travelers Insurance Companies; Union Insurance Company; United Pacific/Reliance Insurance Company; USFG; United States Guaranty; Workers Trust, Inc.; Hawaii County; Kauai County; State of Hawaii; Department of Labor and Industrial Relations; Department of Health; Workers Compensation Board; Joshua Agsalud; Orlando Watanabe; Wallace Okuna; Larry Magnussen, D.C.; and Lindsay Yoshioka, Defendants.
Civ. No. 85-1426.
United States District Court, D. Hawaii.
June 9, 1987.
*547 William K. Maas, Jr., San Francisco, Cal., Ira Dennis Hawver, Honolulu, Hawaii, for plaintiffs.
Howard F. McPheeters, Burke, Sakai, McPheeters, Bordner & Gilardy, Honolulu, Hawaii, for defendants Thomas Grollman, M.D., Kauai Medical Group, Inc., and Larry Magnussen, D.C.
Martin Anderson, Warren Price, III, John R. Lacy, Lisa Woods Munger, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, for Accumed Analysis, American Intern. Adjustment Co., Inc., Argonaut Ins. Company, Hawaiian Dredging & Const. Co., Ins. Co. of North America, John Hancock Mut. Life Ins. Co., John Mullen & Co., Kona Hosp., Mitchell Eli, D.C., Nat. Union Fire Ins. Co., Pacific Ins. Co., Samuel Mahelona Hosp., and the Travelers Ins.
John T. Komeiji, James D. Ing, Lex R. Smith, Kobayashi, Watanabe, Sugita & Kawashima, Honolulu, Hawaii, for Hawaiian Ins. & Guar. Co. Ltd., and Mauna Kea Beach Hotel.
Clifford K. Higa, Milton S. Tani, Deputy Attys. Gen., State of Hawaii, Honolulu, Hawaii, for State of Hawaii, Dept. of Social Services & Housing, Dept. of Labor & Indus. Relations, Dept. of Health, Workers Compensation Board [sic], Joshua Agsalud, Orlando Watanabe, Wallace Okuna, and Lindsay Yoshioka.
Clyde M. Matsui, Honolulu, Hawaii, for State Farm Ins. Co.
George L. Miller, Gary G. Grimmer, Carlsmith, Wichman, Case, Mukai & Ichiki, Honolulu, Hawaii, for Hamakua Sugar Company, Maui Land and Pine, Kapalua Land Co., and Kapalua Bay Hotel.
Michael M. Payne, Honolulu, Hawaii, for Indus. Ins. Co. of Hawaii, Ltd.
Jeffrey S. Portnoy, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for First Ins. Co. of Hawaii, Ltd.
James F. Ventura, Libkuman, Ventura, Ayabe & Hughes, Honolulu, Hawaii, for Transamerica Ins. Co.
Stephen M. Sirota, Petaluma, Cal., for California Pacific Life Ins. Co. and California Pacific Ins. Services, Inc.
Michael F. McCarthy, McCarthy & Huang, Honolulu, Hawaii, for Consol. Adjusters and Don Beaudry Adjustors.
Guy Archer, Fred W. Rohlfing, Deputy Corp. Counsel, Dept. of Corp. Counsel, Wailuku, Maui, Hawaii, for Maui County.
Warren Perry, Deputy Co. Atty., Dept. of Co. Atty., Lihue, Kauai, Hawaii, for Kauai County.
Cuyler E. Shaw, Ashford & Wriston, Honolulu, Hawaii, for Hawaii Medical Services Ass'n.
Carleton B. Reid, Davis, Reid & Richards, Honolulu, Hawaii, for Calvin Kam, M.D.
Richard K. Quinn, Honolulu, Hawaii, for Rowlin Lichter, M.D.
Steven K. Hisaka, Craig K. Furusho, Hisaka & Furusho, Honolulu, Hawaii, for Bishop Ins. Co., Commercial Union Ins. Co. of Hawaii, Commercial Union Life Ins. Co., and Crawford & Co.
Joanne M. Lanham, Fireman's Fund Ins. Co., Archibald C.K. Kaolulo, Honolulu, Hawaii, for Fireman's Fund Ins. Co.
*548 DECISION ON THE APPLICABILITY OF THE AUTOMATIC STAY IN BANKRUPTCY TO THE IMPOSITION OF RULE 11 SANCTIONS
PENCE, Senior District Judge.
Pursuant to a Show Cause Order entered by this court on April 3, 1987, a hearing was held on May 13, 1987 as to why sanctions should not be imposed against plaintiffs and their attorney, William Keith Maas, Jr., under F.R.Civ.P. 11. At that hearing, this court found that Maas was responsible for the drafting, signing, and filing of a complaint, on behalf of five Hawaii chiropractors, naming 97 defendants allegedly engaged in a conspiracy to restrain trade in contravention of a variety of United States and State antitrust and other laws. At the May 13 hearing, this court found that Maas could not have made, and did not make, the "reasonable inquiry" required by Rule 11, and that the complaint was not well grounded in fact and warranted by law. This court imposed sanctions against Maas in the amount of the reasonable expenses incurred by the defendants because of the filing of the complaint, including reasonable attorneys' fees.
Prior thereto, on February 13, 1987, in the Northern District of California, attorney William Keith Maas, Jr. filed an individual petition for relief under Chapter 13 of the Bankruptcy Code. Although Maas related to this court that he would not be (and was not) present at this court's Order to Show Cause hearing, attorney Maas, in a brief submitted to the court, argued that any attempted action by this court to impose sanctions against him is stayed by the "automatic stay" provision of 11 U.S.C. section 362. Section 362 provides in relevant part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of 
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
Maas argued that since the defendants in their moving papers requested sanctions before the September 3, 1986 hearing on Defendants' Motion to Dismiss, i.e., more than five months before the filing of Maas's bankruptcy petition, the present Order to Show Cause is a continuation of a proceeding against the debtor that was commenced before the commencement of Maas's bankruptcy case, and is therefore stayed by the above section.
Subsection (b) to section 362, however, provides certain exceptions to the automatic stay. In particular, subsection (b)(4) provides:
(b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay 
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
The question is therefore presented whether the assessment of sanctions by a court under Rule 11 is an action by a governmental unit to enforce such governmental unit's police or regulatory power.
This court is unaware of any case ruling on the application of bankruptcy's automatic stay provisions to Rule 11 sanctions. This court's decision is therefore predicated upon an analysis of the policies of the Bankruptcy Code's automatic stay and those behind Rule 11, as well as cases ruling on the applicability of the automatic stay in analogous situations.[1]
*549 The Ninth Circuit Bankruptcy Appellate Panel has adopted a "pecuniary purpose" test for applying the exception found in 11 U.S.C. Section 362(b)(4). That test provides that governmental actions which are aimed at obtaining a pecuniary advantage for the governmental unit involved or its citizens are stayed under Section 362(a)(1), while those which represent a direct application of the unit's police or regulatory powers are not. In re Thomassen, 15 B.R. 907 (Bankr. 9th Cir.1981). "It is now well-established that if the government action directed against the debtor relates mainly to the protection of a pecuniary interest rather than the enforcement of regulatory police powers for the protection of the general public, the subsection (b)(4) exception will not apply and the action will be subject to the automatic stay." In re Greenwald, 34 B.R. 954, 956-57 (Bankr.S.D.N.Y 1983) (citations omitted), affirmed and revised in part by In re Greenwald, 48 B.R. 263 (S.D.N.Y.1984). "Whether the governmental action falls within these exemptions depends on whether the government is protecting its pecuniary interest in the property of the debtor, or its interest in the public health and safety". United States v. Caro, 47 B.R. 995 (E.D.N.Y.1985) citing, inter alia, Missouri v. United States Bankruptcy Court, 647 F.2d 768, 776 (8th Cir. 1981), cert. denied 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982).[2]
The financial bite of sanctions under Rule 11 springs from the authority given the court by the language of the Rule to shift fees and costs. Pecuniary interests are affected by the imposition of Rule 11 sanctions, although they are the pecuniary interests of the parties to the litigation, rather than that of any governmental unit. The interest of the governmental unit, here the Federal judiciary branch, is to keep the stream of federal litigation free from unnecessary and abusive legal obstructions.
Federal Rule of Civil Procedure Rule 11 was amended in 1983. As amended, Rule 11 provides in relevant part:
The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
* * * * * *
If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
In explaining the reasons for amendment, the Advisory Committee on Rules noted that since its inception, Rule 11 had provided for "the imposition of disciplinary sanctions to check abuses in the signing of pleadings . . . Experience shows that in practice [the old] Rule 11 has not been effective in deterring abuses." Advisory Committee Note to Rule 11. The abuses referred to are identified by Judge Schwarzer as "frivolous litigation, maintenance of baseless defenses, and harassment of one's opponent." William W. Schwarzer, Sanctions Under the New Federal Rule 11  A Closer Look, 104 F.R.D. 181, 182 (1985). The effect of these practices is to "impose *550 unjustified burdens on other parties, frustrate those who seek to vindicate their rights in the courts, obstruct the judicial process, and bring the civil justice system into disrepute." Id. See also Roadway Express, Inc. v. Piper, 447 U.S. 752, 757 n. 4, 100 S.Ct. 2455, 2459 n. 4, 65 L.Ed.2d 488 (1980).
The purpose of the 1983 Rule 11 is to deter, effectively, these practices. Given the underlying concerns, this court believes imposition of sanctions under Rule 11 is a direct application of the district court's regulatory powers, which serve to protect the general public from needless, harassing, and abusive litigation. We therefore find that under the "pecuniary purpose" test, proceedings to impose sanctions on authority of Rule 11 are not automatically stayed by the filing of a petition in Bankruptcy.
Examination of cases dealing with analogous proceedings supports this conclusion. The Thomassen case, cited above for the "pecuniary purpose" test, involved license revocation proceedings instituted against the debtor physician by California Board of Medical Quality Assurance. The proceedings involved allegations of professional misconduct: That the doctor had committed gross negligence in leaving a cancer patient inadequately supervised during the intravenous administration of Laetrile, and had been dishonest in his financial affairs on four separate occasions. The Debtor attempted to "couch the State's action in pecuniary terms, asserting that the actions of this governmental unit were meant to serve as a means of forcing the payment, by Dr. Thomassen, of certain debts owed to persons whom he had allegedly defrauded." In re Thomassen, supra, 15 B.R. at 909. The Bankruptcy Appellate Panel rejected this argument, and affirmed the Bankruptcy Judge's ruling that such proceedings were excepted from the automatic stay imposed by the debtor physician's Chapter 11 case:
Contrary to the assertsion of counsel for the Debtors, the charges which have been brought against Dr. Thomassen by the California Board of Medical Quality Assurance do not deal with his simple failure to make necessary payments to the state or to its citizens. He has been accused of malpractice and professional incompetence and with fraud in the handling of his patients' and employees' funds. The State's interest in this matter is in punishing such misconduct and in preventing future acts of the type which Dr. Thomassen has been accused. This is a valid police and regulatory interest.
Id.
Like physicians, attorneys are licensed by the state. Courts have an interest in punishing professional misconduct, no less than state regulatory agencies, in order to prevent future acts of the same type. Whether or not Mr. Maas's conduct has sunken to the level of malpractice, it violates Rule 11, and the discouragement of such pleading practices is a valid regulatory concern of this court.
The Court of Appeals for the Ninth Circuit has also expressed concern that the protection of the Bankruptcy Court not be abused. In Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc., 700 F.2d 1279 (9th Cir.1983), District Judge Kelleher had ordered a law firm to return $60,000 it received from a client (the debtor) in violation of a previously entered injunction. The Court of Appeals held that since the injunction was obtained in an action by the Commodity Futures Trading Commission to enforce its regulatory power to stop violations of commodities trading law, actions to enforce the injunction came within the police or regulatory power exception to automatic stay.
The court cited the policy of preventing the bankruptcy court from becoming a haven for wrongdoers. 2 Collier on Bankruptcy Section 362.05, at 362-40 (15th ed. 1982). This court, too, has a real concern that Maas, the debtor, may be a wrongdoer attempting to use bankruptcy court as a haven. Attorney Maas's Chapter 13 petition, which was filed before this court's "Decision on Defendants' Motions to Dismiss Complaint and Order to Show Cause Why Sanctions Should Not Be Imposed On Plaintiffs And Attorney Maas", listed both the plaintiffs (his clients) and all defendants *551 as creditors of his estate! Maas apparently anticipated that his behavior in conducting this suit might give both the defendants and his former clients claims against his estate. This court refuses to allow an attorney to light the fuse by naming 97 defendants as co-conspirators, and toss the lighted squib to his clients as he runs to escape under shelter of the bankruptcy court.
The case law also supports the conclusion that a proceeding resulting in a monetary penalty may be excepted from the automatic stay as much as one resulting in a prison sentence or injunctive relief. The deterrent effect of monetary penalties was explored in U.S. v. Standard Metals Corp., 49 B.R. 623 (D.Colo.1985), a case in which the United States sought entry of a money judgment against a debtor for violation of a stipulation and settlement agreement concerning alleged violations of the Clean Water Act. The court held that the action for entry of a fine was excepted from the automatic stay under Section 362(b)(4). The court's reasoning is enlightening for the instant case:
If consideration of the fine mechanism is confined to the time after the [harm] occurred, it may appear that the government is merely trying to protect a pecuniary interest in collecting the fine . . . [But o]ne must consider the deterrence function of the fine prior to the [harm]. If one in precarious financial condition knows that any action to assess a fine will be stayed by filing for bankruptcy . . . [t]he public's safety, health and welfare would be placed in jeopardy by eliminating the practical deterrent of the fine in those circumstances. It is the purpose of Section 362(b)(4) to prevent endangerment of the public that would result from permitting a bankrupt to avoid statutes and regulations enacted in furtherance of governmental police powers.

Id., at 625.
This theme, that the imposition of a monetary penalty does not necessarily make the action one in which the government is protecting a pecuniary interest, is also supported by U.S. v. Energy Intern, Inc., 19 B.R. 1020 (S.D.Ohio 1981). This case concerned an action by the United States to collect a civil penalty assessed by the Department of the Interior against debtor for numerous violations of Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. Sections 1201 et seq. The district court held the "action by the United States to collect a civil penalty is one to enforce its regulatory power," and thus is not stayed by Section 362(a)(1). Id., at 1021. See also Marshall v. Tauscher (In re Tauscher), 7 B.R. 918 (Bankr.E.D.Wis.1981) (assessment of civil monetary penalties for violations of the Fair Labor Standards Act (child labor laws) not stayed); Matter of Garay, 444 A.2d 1107, 89 N.J. 104 (1982) (civil penalty for fraudulent filing of 58 false Medicaid claims within the section 362(b)(4) exception to the automatic stay) (reversed and remanded on other grounds); Matter of Jesus Loves You, Inc., 40 B.R. 42 (Bankr.M. D.Fla.1984) (action by the Florida attorney general to revoke debtor's corporate charter held to be "clearly outside of the protection afforded by the automatic stay," so that the State of Florida was allowed to proceed in state court to the point of final judgment); In re Porter, 42 B.R. 61 (Bankr.S.D.Tex.1984) (City and State were excepted from automatic stay in their efforts to prevent any use of a building of debtor which had been used for prostitution purposes).
"Although one effect of enforcement of the judgment in this action would be compensation to certain individuals," the court in E.E.O.C. v. Rath Packing Co., 37 B.R. 614 (S.D.Iowa 1984), nevertheless allowed Equal Employment Opportunity Commission proceedings to continue to the point of liquidation and entry of judgment after the employer filed for bankruptcy. This case thus extends the reasoning of the above cases to include situations where the monetary penalty accrues to the benefit of individuals, rather than to the governmental unit. The court reasoned that allowing such action would not interfere with the bankruptcy court's control of the bankruptcy estate, and it would prevent the use of section 362(b)(4) as an "escape mechanism" *552 from the enforcement of federal law and policy. Id. at 617. See also Note 1, supra.
It is therefore ordered that attorney William Keith Maas, Jr.'s Objection to this court's hearing on May 13, 1987 of its Show Cause Order with respect to Maas is DENIED.
The May 13, 1987 hearing on this court's previous Order to Show Cause was properly held as to Attorney William Keith Maas, Jr.'s prior actions despite his pending Bankruptcy petition. The sanctions imposed on May 28, 1987 by a companion order are excepted from the automatic stay of 11 U.S.C. section 362(a)(1) by 11 U.S.C. section 362(b)(4). The court will determine the amount of such sanctions at a future hearing.
IT IS SO ORDERED.
NOTES
[1] At the outset, it is apparent that there is no exception to the automatic stay which will permit this court at this time to enforce any money judgment this court might enter against the debtor's estate. "Section 362(b)(5) `extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.' H.R.Rep. No. 595, 95th Cong., 2d Sess. 343 (1977), reprinted in [1978] U.S. Code Cong. & Ad.News 5787, 5963, 6299." See 11 U.S.C. Section 362(b)(5). This court thus leaves the management of the bankrupt's estate to the United States Bankruptcy Court for the Northern District of California.
[2] In re Herr, 28 B.R. 465 (Bankr.Maine 1983) notes an alternative "public policy" test, which distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are excepted from the automatic stay. Citing In re Dan Hixson Chevrolet Co., 12 B.R. 917, 920 (Bankr.N.D.Tex. 1981).